IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> § <br> SHUMATE ENERGY ECHNOLOGIES, § <br> INC. § <br> § <br>        DEBTOR. § | Case No.  11-32327 <br><br> Chapter 11 |

### EMERGENCY MOTION FOR USE OF ALLEGED CASH COLLATERAL

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 14 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE OF SAID COURT:**

      SHUMATE ENERGY TECHNOLOGIES, INC. (the "Debtor-in-Possession" or "Debtor" or "SETI") hereby files this Emergency Motion for Use of Alleged Cash Collateral, and for cause would respectfully show:

1

## I.     JURISDICTION AND VENUE

1.     The Court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334 and 157. These matters concern the administration of these bankruptcy estates; accordingly, the matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are 11 U.S.C. §§ 361 and 363 and Bankruptcy Rules 2002, 4001, and 6004.

## II.     STATEMENT OF FACTS

**A.     Bankruptcy Filing**

2.     On March 17, 2011 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  The Debtor continues in possession of its property and is operating its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107, 1108.

**B.     History**

3.     SETI was established in 1979.  SETI's core business revolves around high precision and close tolerance machining of exotic materials as well as everyday materials such as aluminum, 300 series stainless, and carbon steel. SETI has the capability of machining long tubular O.D. and I.D. products (i.e. deep bore machining up to 80" in an I.D. 8" or greater, 55" deep in an I.D. 5" or greater).  The company manufactures products for the oil and gas drilling industry, including top-drive units, blow-out preventers, expandable liner hangers, directional drilling products and sub-sea equipment.

4.     SETI follows strict daily operating procedures that each employee is required to follow. These basic, but critical principles are the foundation of SETI's success with customers.

SETI has implemented E2 manufacturing control software to help the company to become more efficient, and has also added a full time Quality Assurance department to constantly check the company's performance levels.

5. SETI's facilities include 30,000 square foot floor space; 5,000 pound overhead cranes; a 5,000 pound forklift; climate controlled environment; computerized order processing, scheduling tracking; and a bar coding system.

6. On September 30, 2008, SETI executed a $5,000,000 promissory note ("Term Loan Note"), as maker, in favor of Stillwater National Bank and Trust Company ("SNB"), as payee (the "Term Loan Note"). Additionally, on said date SETI executed a $1,000,000 promissory note ("Working Capital Note"), as maker, in favor of SNB, as payee. As of February 28, 2011, SETI's books indicated that the following amounts owed to SNB:

$4,622,888.78 on the Term Loan Note;

$861,073 on the Working Capital Note;

7. On October 9, 2008, SNB filed a financing statement with the Secretary of State of the State of Texas (FILING NUMBER: 08-0033166855) covering the following collateral:

> "All of the Debtor's goods, chattels, accounts, accounts receivable, contract rights, inventory, equipment, computer equipment, computer hardware, computer software, general intangibles, and all other tangible and intangible personal property, and a second priority security interest in that certain Sunfirm piece of equipment in the amount of $219,600.00, whether now owned or hereafter acquired, and all proceeds, products, rents, profits and income therefrom."

However, a security agreement covering such collateral has not been found as of this date.

8. On September 30, 2008, SETI and SNB executed a Security Agreement covering the following collateral:

> "all of the Debtor's bank accounts now or hereafter opened or maintained with Secured Party including, but not limited to Deposit Account Number 5013716 (the "Reserve Account") and Operating Account Number 5013683 (the "Operating

3

    Account"), together with all cash now or hereafter deposited therein, maintained by the Debtor with the Secured Party, and all of the Debtor's rights attributable thereto, and all proceeds, products, increases, interest, income, gains, issue, replacements and substitutions of all of the foregoing (all of the foregoing described property including the Operating Account is referred to herein as the "Property")."

On October 9, 2008, SNB filed a financing statement with the Secretary of State of the State of Texas (FILING NUMBER: 08-0033166966) covering said collateral.

9. Due to the downturn in the economy commencing in the third quarter of 2008, immediately after the Debtor closed its loans with SNB, and as exacerbated by the cessation of any drilling activity for months 2009 and 2010 in the Gulf of Mexico due to the BP oil spill, Debtor's business has been devastated. However over the last six months, business has picked up dramatically, and Debtor is seeing a return to normalcy. Debtor believes that its business should grow over the next five years for a variety of reasons, including an increased emphasis on exploration and development of oil and gas reserves in the Gulf of Mexico and elsewhere due to the Japan nuclear reactor meltdown and mounting uncertainty concerning Middle East oil supplies.

### III.   RELIEF REQUESTED

10. Under 11 U.S.C. § 363(a) "cash collateral" is defined as follows:

**"(a)** In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552 (b) of this title, whether existing before or after the commencement of a case under this title."

11. Under 11 U.S.C. § 363(c)(2), the Debtor may not use, sell or lease cash collateral without the Court's authority or the secured creditor's consent.  11 U.S.C. § 363(e) allows the Court to grant this authority upon the provision of adequate protection.

12.     The Debtor seeks to use cash collateral as that term is defined in section 363(a), in accordance with the two-week budget (the "Budget") attached hereto as **Exhibit "A"**.

13.     The Debtor hereby requests that the Court approve the proposed Cash Collateral Order that has been uploaded with this Motion.  The decretal paragraphs of the Cash Collateral Order are set forth below and define the terms of use of cash collateral proposed by SETI and adequate protection afforded to SNB:

> 1.      **Term and Extent of Cash Collateral Use.**  The Debtor is authorized to use the Cash Collateral, as set forth in the Budget until April 1, 2011, unless further extended by order of the Court.  Without the prior written consent of the SNB, the Debtor acknowledges and agrees that: (A) with respect to the line items set forth for expenses or disbursements in the Two Week Budget, the Debtor shall not have a variance of more than twenty five (25%) of any such amount; (B)  the Debtor shall deposit all Cash Collateral (including all Cash Collateral on hand and received in the future) in the Debtors' DIP Operating or Payroll Accounts to be maintained at SNB; (C) the Debtor's requirement to segregate the Cash Collateral shall continue even if the Debtor's authority to use Cash Collateral is terminated in the future for any reason; including, but not limited to, the appointment of a trustee; and (D) during the pendency of this case, Debtor shall not use Cash Collateral other than in the ordinary course of business except as permitted herein or except to the extent SNB consents in writing prior to the use of such Cash Collateral.
>
> 2.      **Replacement Liens.**  As adequate protection, but only to the extent of the use of inventory, work in process, receivables and cash from and after the Petition Date as set forth herein, SNB is hereby granted, without any further action (a) a continuing, additional and replacement liens and first priority security interests in inventory, work in process, receivables and cash generated by the Debtor on a postpetition basis; and (b) a continuing, additional and replacement liens and first priority security interests in, to and against any and all proceeds of any and all of the foregoing, and all accessions or additions thereto, substitutions, renewals, improvements and replacement thereof, and proceeds of any insurance on or with respect to any of the foregoing (the "Replacement Liens"), but only as to the extent of inventory, work in process, receivables and cash used by the Debtor after the Petition Date.
>
> 3.      **Additional Adequate Protection.**  To the extent of the decline in the value of SNB's interest in inventory, work in process, receivables and cash as of the Petition Date, SNB is granted (a) an administrative claim against the Debtor, and (b) a lien against any unencumbered real or personal property of the Debtor.

4. **Additional Collateral.** The rights and obligations of the Debtor and the rights claims, security interests, liens and priorities of SNB arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens and priorities granted under the prepetition loan documents, and are granted pursuant to 11 U. S. C. §§ 361, 362, and 363.

5. **Validity of Liens.** The Replacement Liens granted pursuant to this Order shall be deemed effective, valid and perfected as of the date of the entry of this Order without the necessity of the filing or lodging by or with any entity of any documents or instruments otherwise required to be filed or lodged under applicable non-bankruptcy law. This Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of SNB's Replacement Liens. The Replacement Liens shall be valid and perfected as against, and binding upon, the Debtor and its successors, including any trustee, receiver or similar successor, in this or any subsequent case under the Bankruptcy Code or in any insolvency or similar case or proceeding, and also upon any creditor of the Debtor who may have extended or may hereafter extend credit to the Debtor, or who may assert a claim in this or any subsequent case or proceeding, whether or not notice of this Order or this case has been filed in any place or with any person, including any official of any governmental jurisdiction within which the Debtor's property is located, whether municipal, county, state, or federal. Notwithstanding the above, Debtor shall cooperate with SNB to execute such documents and instruments and do such things as the bank reasonably requests to evidence and perfect the Replacement Liens, and the automatic stay is hereby modified to allow SNB to take such action as it may deem necessary to perfect the Replacement Liens.

6. **Binding Effect.** The provisions of this Order shall be binding upon and inure to the benefit of the SNB and the Debtor, and their respective successors and assigns, including any trustee appointed in this or any superseding case under the Bankruptcy Code.

7. **Reservation of Rights.** Nothing contained in this Order or otherwise is intended to prevent or prejudice the rights of the SNB to seek to terminate the automatic stay pursuant to 11 U.S.C. § 362, or take any other action it may deem necessary to protect its rights. Nothing contained in this Order is intended to prevent the Debtor or any Creditors' Committee or creditor to investigate and challenge the validity, priority and extent of the liens and indebtedness of SNB.

## IV.     INTERIM APPROVAL SHOULD BE GRANTED

14.     The Debtor requires immediate access to Cash Collateral to, among other things, pay necessary operating expenses.

15.     The immediate and temporary approval of the use of the inventory, work in process, receivables and cash proposed in the Agreed Cash Collateral Order is consistent with the requirements for: (i) maintaining the going concern value of the Debtor's business operations; (ii) the law under Bankruptcy Code §§ 363 (regarding the use of cash collateral) and 361 (regarding adequate protection); and (iii) facilitating a successful reorganization of the Debtor's business under Chapter 11.  The relief requested is in the best interests of the Debtor's estate.

16.     The failure to authorize the immediate use of the Cash Collateral will result in a swift and significant deterioration of the Debtor's business, and could ultimately result in the cessation and liquidation of the Debtor's business.  Debtor requests that, pending the final hearing on this Motion, the Court authorize the Debtor to immediately use inventory, receivables and cash in the amounts set forth in the Budget pursuant to the terms of the Agreed Cash Collateral Order and the attached two-week budget.

WHEREFORE, the Debtor prays for the immediate use of Cash Collateral pursuant to the terms of the proposed Agreed Cash Collateral Order submitted with this Motion, and further prays for such other and further relief as is just.

Respectfully submitted this 18th day of March 2011.

/s/ Leonard H. Simon
**Leonard H. Simon, Esq.**
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
**PROPOSED COUNSEL FOR DEBTOR**

**OF COUNSEL:**
**PENDERGRAFT & SIMON**
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served by electronic transmission to all registered ECF users appearing in the case on this 18th day of March 2011. Further, on the 18th day of September 2010, a true and correct copy of the above and foregoing was served by regular US Mail on Internal Revenue Service, the Montgomery County Tax Assessor and Collector, the Debtor's Secured Creditors, the Twenty Largest Unsecured Creditors, all parties who have requested notice, the US Trustee, all parties listed in the attached service list.

/s/ Leonard H. Simon
Leonard H. Simon

# **EXHIBIT "A"**

**CASE NAME:** Shumate Energy Technologies, Inc
**CASE NUMBER:** 11-32327

| CASH RECEIPTS AND DISBURSEMENTS | First Week* | Second Week | First Two Weeks |
|---|---|---|---|
| 1. CASH-BEGINNING AS OF 03/18/2011 | $28,237.24 | $45,458.24 | $28,237.24 |
| **RECEIPTS:** | | | |
| 2. COLLECTION OF POSTPETITION RECEIVABLES | | | |
| 3. COLLECTION OF PREPETITION RECEIVABLES | 229,882.00 | 295,419.00 | 525,301.00 |
| 4. LOANS & ADVANCES | | | |
| 5. SALE OF ASSETS** | | | |
| 6. OTHER | | | |
| TOTAL RECEIPTS | 229,882.00 | 295,419.00 | 525,301.00 |
| | | | |
| **DISBURSEMENTS:** | | | |
| 7. GROSS PAYROLL - HOURLY | | | |
| 8. EMPLOYER TAXES - HOURLY | | | |
| 9. GROSS PAYROLL & TAXES- WEEKLY | 63,000.00 | 69,000.00 | 132,000.00 |
| 10. EMPLOYEE HEALTH & OTHER INSURANCE | 4,059.00 | 22,573.00 | 26,632.00 |
| 11. SALARIED PAYROLL - GROSS | | | |
| 12. CNC EQUIPMENT CAPITAL LEASES | 11,202.00 | | 11,202.00 |
| 13. SALES, USE & OTHER TAXES | | | |
| 14. FACILITY RENT | | 11,050.00 | 11,050.00 |
| 15. TELEPHONE - CONSOLIDATED | 1,566.00 | | 1,566.00 |
| 16. ELECTRICY - ENTERGY | 5,153.00 | | 5,153.00 |
| 17. CELLULAR PHONE REIMBURSEMENT | 215.00 | 215.00 | 430.00 |
| 18. OFFICE SUPPLIES & JANITORIAL | 539.00 | 200.00 | 739.00 |
| 19. WASTE REMOVAL | 206.00 | | 206.00 |
| 20. AUTO, INDUSTRIAL & PROPERTY INSURANCE | 4,113.00 | | 4,113.00 |
| 21. INVENTORY PURCHASES (see attached) | 105,323.00 | 70,540.00 | 175,863.00 |
| 22. TRUCK & FUEL EXPENSE | 2,839.00 | 700.00 | 3,539.00 |
| 23. REPAIRS, MAINTENANCE & SUPPLIES | 13,100.00 | 13,100.00 | 26,200.00 |
| 24. ADMINISTRATIVE & SELLING | 1,346.00 | 3,399.00 | 4,745.00 |
| 25. FREIGHT | | | |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 212,661.00 | 190,777.00 | 403,438.00 |
| 26. PROFESSIONAL FEES*** | | | |
| 27. U.S. TRUSTEE FEES | | | |
| 28. OTHER REORG EXPENSES (attach list) | | | |
| TOTAL DISBURSEMENTS | 212,661.00 | 190,777.00 | 403,438.00 |
| 29. NET CASH FLOW | 17,221.00 | 104,642.00 | 121,863.00 |
| 30. CASH - END OF PERIOD | $45,458.24 | $150,100.24 | 150,100.24 |