IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **SHUMATE ENERGY** | § | **Case No.  11-32327** |
| **TECHNOLOGIES, INC.** | § | **Chapter 11** |
| **DEBTOR.** | § | |
| | § | |

### PLANOF REORGANIZATION
### (Dated as of July 28, 2011)

**THIS PLAN OF REORGANIZATION HAS BEEN SET FOR HEARING ON _____ __, 2011, AT _____.M., IN COURTROOM 400, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS, 77002**

On or about March 18, 2011 (the "Petition Date"), Shumate Energy Technologies, Inc. ("Debtor" or "SETI") filed its voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division ("Bankruptcy Court" or "Court").

If you are a Creditor or Interest Holder, you should read the Disclosure Statement that accompanies this Plan of Reorganization (the "Plan") carefully.  The Debtor urges all holders of Claims in Impaired Classes receiving Ballots to accept this Plan proposed by the Debtor.

## I.   DEFINITIONS

For purposes of this Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article.  Any term used in this Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

"Administrative Claim" or "Administrative Priority Claim" means a Claim that is entitled to priority under §§ 326, 327, 330, 503(b)(1) - (9), 506(c) or 1103 asserted in this case, which Claims are described in section V of this Disclosure Statement and Plan  and treated in section V of this Disclosure Statement and Plan.

"Administrative Claim Bar Date" means the date set by the Court by which Administrative Claims entitled to priority under §§ 326, 327, 330, 503(b), 506(c) or 1103 asserted in this case, including substantial contribution Claims, must be filed.  Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"Allowed Claim"  means a Claim or any portion thereof (i) that has been allowed by a Final Order, (ii) that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) that is expressly allowed in a liquidated amount in this Plan; provided, however that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (i) a timely objection has not been filed, or (ii) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"Bankruptcy Estate" shall mean the estate created under § 541 upon the filing of the Bankruptcy Case.

"Bankruptcy Rules" mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Claim"  means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in § 101(5).

"Class"  means a category of holders of Claims or Interests, as described in Section IV below.

"Confirmation" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"Confirmation Date" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan.

"Disclosure Statement" means the Disclosure Statement filed contemporaneously with this Plan.

"Effective Date" means the date when the Confirmation Order becomes a Final Order.

"Final Order"  means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"Impaired"  means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124.

"IRS" means the Internal Revenue Service.

"Person" means an individual, corporation, partnership, governmental unit, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, or other entity.

"Plan" means this Plan of Reorganization.

"Plan Documents" means any documents referenced in this Plan that are intended to be executed pursuant to the Confirmed Plan.

"Priority Claim" means a Claim asserted under § 507(a)(3-10) against the Debtor's Bankruptcy Estate.

"Retained Claims" shall mean any avoidance or preference claim under §§ 542-551 or other causes of action owned by the Debtor as of the Confirmation Date.

"Secured Claim" means a Claim, other than a Setoff Claim, that is secured by an Encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the Effective Date or such later date as is established by the Bankruptcy Court, of such interest or Encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"Substantial Consummation" shall have the meaning given to that term in § 1101(2).  Substantial Consummation shall occur on the Effective Date.

"Unimpaired Claim" means a Claim that is not an Impaired Claim.

"Unsecured Claim" shall mean a Claim that is not entitled to priority under § 507(a)(1-9), and includes deficiency Claims of any of the secured creditors.

"Voting Deadline" means August __, 2011, at 5:00 p.m., the deadline by which Ballots to accept or reject this Plan must be received by Debtor's counsel by in order to be counted.

## II.    RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A.    Rules of Interpretation.

For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in this Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to this Plan; (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and (f) the rules of construction set forth in § 102 and in the Bankruptcy Rules shall apply.

**B.      Computation of Time.**

All times referenced in this Plan are prevailing Central Time.  In computing any period of time prescribed or allowed by this Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

### III.    BAR DATES AND TREATMENT FOR ADMINISTRATIVE CLAIMS

With respect to all requests for payment of professional fees pursuant to §§ 327, 328, 330, 331, 503(b), 506(c) or 1103 for services rendered and expenses incurred prior to the Effective Date, such professionals shall file and serve an application for final allowance of compensation and reimbursement of expenses no later than 30 days after the entry of the Confirmation Order.

### IV.  CLASSIFICATION, NATURE OF

### AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**A.      Introduction.**

All Claims and Interests are placed in the Classes set forth below.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled.

**B.      Classes of Claims And Equity Interests and Their Treatment.**

**1.      Class 1  -- Administrative Claims Against the Debtor's Bankruptcy Estate**

All Administrative Claims entitled to priority under 11 U.S.C. §§ 326, 328, 329, 330, 503(b), 506(c) and 1103 filed in the Debtor's Bankruptcy Case.  The Claims in this Class shall consist of all Administrative Claims entitled to priority under Section 503(b) of the Bankruptcy Code, in the Debtor's Bankruptcy Estate.   A summary of the claims in Class 1 are as follows:

| ESTIMATED CLASS 1 ADMINISTRATIVE CLAIMS | | | |
|---|---|---|---|
| **Claimant** | **Amount** | **Unimpaired/Comments** | |
| United States Trustee | 6,500.00 | Based on amounts disbursed | |
| Pendergraft & Simon | 30,000.00 | Net of $15,000.00 Retainer | |
| Wayne Fuquay | 10,000.00 | Net of $7,500 Retainer | |
| Okin, Adams & Kilmer LLP | 15,000.00 | No Retainer | |
| **TOTAL:** | $61,500.00 | | |

4

**Treatment of Class 1 Claims.**  All Administrative Claims allowed by the Court as of the Confirmation Date shall be paid by the Debtor in full on the Effective Date unless a particular administrative creditor agrees to other treatment.   To the extent an Administrative Claim is allowed after the Confirmation Date, the Debtor shall pay such claim on the date the order allowing such claim becomes a Final Order.  The Debtor' Bankruptcy Estate  shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to 11 U.S.C. § 1930(a)(6).  Any fees due as of the date of confirmation of this Plan will be paid in full on the Effective Date of this Plan.  After the Effective Date, the Debtor shall pay United States Trustee quarterly fees as they accrue until the Debtor' Bankruptcy Case is closed by the Court.  The Debtor shall file with the Court quarterly financial reports for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.  The Debtor shall timely pay on the Effective Date all pre-confirmation quarterly fees owed to the United States Trustee.   The Debtor also shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this chapter 11 case, or enters an order either converting this case to a case under chapter 7 or dismissing this case.  After confirmation, the Debtor shall file with the Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of all disbursements made by the Debtor for each quarter, or portion thereof, that this chapter 11 case remains open in a format prescribed by the United States Trustee.  This Class is unimpaired.

**2.     Class 2 – Allowed Priority Claims of Taxes and Certain Other Debts Owed to Governmental Units**

*a.     Description of Class 2 Claims.*

Class 2 consists of the Allowed Priority Claims of Governmental Units, including taxes, customs duties and penalties owing to federal, state and local governmental units as set forth in 11 U.S.C. § 507(a)(8).  Such claims are set forth in the table below:

| | | | | | | |
|---|---|---|---|---|---|---|
| **CLASS 2 CREDITORS WITH PRIORITY UNDER 11 U.S.C. § 507(a)(8)** | | | | | | |
| | **CREDITOR NAME** | **AMOUNT DEBTOR'S RECORDS** | **CONTINGENT UNLIQUIDATED DISPUTED – INTENT TO FILE OBJECTION** | | **CREDITOR FILED PROOF OF CLAIM** | | **DEBTOR'S PRELIMINARY ESTIMATE ON CLAIM ALLOWANCE** |
| | | | **C,U,D[1]** | **OBJECT** | **DATE** | **AMOUNT** | |
| 1. | Comptroller of Public Accounts | $17,012.50 | U | STR[2] | 06/29/2011 | $1,000.00 | $1,000.00 |
| 2. | Internal Revenue Service | $186,286.08 | U | STR | 05/18/2011 | $66,286.71 | $66,286.71 |
| 3. | Montgomery County -2011 and Prior | 39,885.74 | U | STR | 03/28/2011 | $65,148.91 | $65,148.91 |
| | TOTAL | $243,184.32 | | STR | | | $132,435.62 |

**b.**     *Treatment of the Class 2 Claims*.

The Allowed Priority Claims of Creditors in this Class 2 shall be treated in accordance with 11 U.S.C. § 1129(a)(9)(C).  Each Creditor with an Allowed Priority Claim shall receive monthly payments of principal and interest as though such claim was being amortized over a 120 month period, with a balloon payment being due on March 17, 2016 (five years after the date of the Order for Relief).  The first monthly payment shall be due and payable on the first day of the month next following the month in which the Effective Date occurs.  The interest rate on the Allowed Priority Claim of the IRS shall be the interest rate provided for under 26 U.S.C. § 6621 & 6622 (4%).  The interest rate on the Allowed Priority Claim of Montgomery County shall be the interest rate provided for by statute on Texas ad valorem taxes.  The monthly payments and balloon payments are set forth in the following table.

| **CREDITOR** | **AMOUNT** | **MONTHLL PAYMENT** | **BALLOON PAYMENT** |
|---|---|---|---|
| Comptroller of Public Accounts | $1,000.00 | $10.38 | $613.00 |

---

[1] "C" stands for "Contingent"; "U" stands for "Unliquidated"; "D" stands for "Disputed".  In a Chapter 11 Case, if a claim is listed as "Contingent", "Unliquidated" and/or "Disputed", the claim is deemed disallowed, and a creditor must file a proof of claim on or before the claims bar date, which in this case is July 13, 2011, except for governmental units.

[2] "STR" means "subject to review" - The Claim is still being reviewed by Debtor, and a decision as of this time has not been made as to whether an objection will be filed.

| | | | |
|---|---|---|---|
| Internal Revenue Service | $66,286.71 | $671.12 | 40,237.99 |
| Montgomery County -2011 and Prior | $65,148.91 | 934.70 | 45,481.05 |
| **TOTALS** | $132,435.62 | $1,616.20 | $86,332.04 |

This Class is unimpaired.

**3.      Class 3 – Allowed Priority Claims of – Accrued Contributions to Employee Benefit Plans.**

The Debtor has scheduled accrued contributions to employee benefit plans in the amount of $5,808.18.  The accrued employee benefit plan liability has been paid.

**4.      Class 4 – Allowed Priority Claims of – Accrued Vacation Liability to Employees.**

The Debtor has scheduled accrued vacation liability of the Debtor's employees in the amount of $15,134.65.  The accrued vacation liability shall be recognized and due to the employees of the Debtor as if no bankruptcy proceeding had been filed.  This Class is unimpaired.

**5.      Class 5 – Allowed Priority Claims of – Accrued Contributions to Employee Benefit Plans.**

The Debtor has scheduled accrued and due payments to the Texas Disbursement Unit of $889.08 for domestic support obligations retained from employees out of their monthly salary checks.  The accrued but unpaid domestic support obligations has been paid.

**6.      Class 6 – Allowed Secured Claim of Stillwater National Bank and Trust Company.**

*a.      Description of Class 6 Claim.*

Class 6 consists of the Allowed Secured Claim of Stillwater National Bank and Trust Company ("SNB").  On September 30, 2008, SETI executed a $5,000,000 promissory note ("Term Loan Note"), as maker, in favor of Stillwater National Bank and Trust Company ("SNB"), as payee (the "Term Loan Note").  Additionally, on said date SETI executed a $1,000,000 promissory note ("Working Capital Note"), as maker, in favor of SNB, as payee.  As of March 18, 2011 (the "Petition Date"), SETI owes the following amounts to SNB:

$4,769,697.35   Term Loan Note
$   883,176.32   Working Capital Note; and
$   522,176.66   Overdraft.
$6,175,050.33   TOTAL

On September 30, 2008, SETI and SNB executed a Security Agreement covering the following collateral:

> "first priority security interest in all of the Debtor's goods, chattels, accounts, accounts receivable, contract rights, inventory, equipment, computer equipment, computer hardware, computer software, general intangibles, and all other tangible and intangible personal property, and a second priority security interest in that certain Sunfirm piece of equipment in the amount of $219,600.00, whether now owned or hereafter acquired, and all proceeds, products, rents, profits and income therefrom (the "Property")."

On October 9, 2008, SNB filed a financing statement with the Secretary of State of the State of Texas (FILING NUMBER: 08-0033166855) covering said collateral.

On September 30, 2008, SETI and SNB executed a Security Agreement covering the following collateral:

> "all of the Debtor's bank accounts now or hereafter opened or maintained with Secured Party including, but not limited to Deposit Account Number 5013716 (the "Reserve Account" and Operating Account Number 5013683 (the "Operating Account"), together with all cash now or hereafter deposited therein, maintained by the Debtor with the Secured Party, and all of the Debtor's rights attributable thereto, and all proceeds, products, increases, interest, income, gains, issue, replacements and substitutions of all of the foregoing (all of the foregoing described property including the Operating Account is referred to herein as the "Property")."

On October 9, 2008, SNB filed a financing statement with the Secretary of State of the State of Texas (FILING NUMBER: 08-033166966) covering said collateral.

**b.     *Valuation of the Class 6 Claim*.**

Rule 3012 of the Bankruptcy Rules of Civil Procedure provides as follows:

> "The Court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and to any other entity as the Court may direct."

The Notes of the Advisory Committee on Rule 3012 provides as follows:

> "Pursuant to Sec. 506(a) of the Code, secured claims are to be valued and allowed as secured to the extent of the value of the collateral and unsecured, to the extent it is enforceable, for the excess over such value."

The Allowed Secured Claim of SNB shall be determined by agreement between the Debtor and SNB. However, if no agreement can be reached prior to the Confirmation Hearing, the Court shall conduct a valuation hearing as part of the Confirmation Hearing pursuant to 11 U.S.C. §506(a) and Bankruptcy Rule 3012.

The components of SNB's Allowed Secured Claim shall include cash, accounts receivable, furniture, fixtures and equipment, inventory and work in process, and the effective date of the valuation shall be the Confirmation Date.

***c.***     ***Treatment of the Class 6 Claim***.

The Class 6 Allowed Secured Claim of SNB shall be treated in the following fashion:

**(i)**     <u>**Class 6 All Cash Option:**</u>

Debtor shall, on or before September 30, 2011, make a cash payment to SNB in the amount of $3,125,000.00 in full and final satisfaction of any and all of SNB's Claims against the Debtor. In such event, the liens and security interests of SNB, and the guarantees of Larry Shumate and American International Industries, Inc. shall be released. The Debtor shall have until Confirmation Hearing to exercise the All Cash Option. SNB has agreed to accept an All Cash Option payment in the amount of $3,125,000.00 on or before September 30, 2011. Therefore, any Cash Option Payment that is less than $3,125,000.00 or paid later than September 30, 2011, will have to be the subject of further negotiations and agreement between SNB and the Debtor.

**(ii)**     <u>**Class 6 No Cash Option – No 1111(b)(2) Election:**</u>[3]

<u>Class 6 Plan Note – No 1111(b)(2) Election:</u>  The Reorganized Debtor shall issue to SNB a Class 6 Plan Note dated as of the Effective Date under this Plan, in the principal amount of the secured portion of SNB's claim, as determined by the Bankruptcy Court pursuant to 11 U.S.C. § 506(a) and Bankruptcy Rule 3012, in renewal, modification and extension of SNB's existing note.

<u>Interest Rate:</u>  Interest on the unpaid outstanding principal balance of Class 6 Plan Note shall be payable at the greater of (a) the Prime Rate plus one percent (1 %) per annum adjusted on each day on which a change in the Prime Rate occurs, or (b) six percent (5%) per annum (the "Interest Rate"). "Prime Rate" means the prime rate as published in the "Money Rates" section of the Wall Street Journal, which rate is not necessarily the lowest rate of interest charged by SNB.

---

[3] This Class 6 No Cash Option shall apply if the Debtor is unable to make the $3,125,000.00 cash payment on or before September 30, 2011, or on terms otherwise agreed to as between the Debtor and SNB.

<u>Payment</u> Terms.   The Class 6 Plan Note shall be amortized and paid in monthly installments of principal and interest, as though said note was being amortized on a 180 month amortized basis.  The Class 6 Note shall become due and payable in full five years after date, September 30, 2011.   Assuming the secured portion of SNB's claim is $3,125,000.00, the Reorganized Debtor shall issue a Class 6 Plan Note to SNB in the amount of $3,125,000.00.  The note shall bear interest at a five percent rate, and shall be paid as though amortized over a fifteen year period.  In such case, the monthly payments of principal and interest would be $24,712.30, and the balloon payment on September 30, 2016 would be $2,344,851.18.

<u>Lien Retention Provisions:</u>  SNB shall retain all liens it currently holds on any property of the Reorganized Debtor until it receives payment in full of the Class 6 Plan Note.

<u>Default Provisions:</u>  Upon a default by the Reorganized Debtor in the performance of its obligations under the Class 6 Plan Note, SNB may exercise all of its rights and remedies set forth in the Class 6 Note, or any right or remedy available under applicable bankruptcy or non-bankruptcy law, or any right or remedy available under related security documents, including but not limited to, its rights to obtain possession and foreclose upon the SNB collateral; provided, <u>provided,</u> <u>however,</u> before exercising any such right or remedy, (a) SNB must give written notice of non-monetary default and an opportunity to cure such default for a period of 45 days from the date of service of such written notice of a non-monetary default, and (b) SNB must give written notice of monetary default and an opportunity to cure such default for a period of 7 days from the date of service of such written notice of a monetary default. Such written notice shall be served by certified mail, return receipt requested, or by messenger, and shall be addressed to the maker of the Class 6 Plan Note and all Guarantors of the Class 6 Plan Note.

**(iii)    Class 6 No Cash Option – 1111(b)(2) Election:**[4]

<u>Class 6 Plan Note – 1111(b)(2) Election:</u>  SNB shall be required to make the election under 11 U.S.C. § 1111(b)(2) (the "1111(b)(2) Election") at a date and time set by the Court at the hearing on the Debtor's Disclosure Statement.  In the event SNB makes the 1111(b)(2) Election, the Class 6 Plan Note shall be in the amount of $6,175,050.53, less any adequate protection payments made during the course of the Chapter 11 Case.

<u>Interest Rate:</u>  Interest on the unpaid outstanding principal balance of Class 6 Plan Note shall be payable at a rate equal to ½ percent (.5%) per annum (the "Interest Rate

<u>Payment</u> Terms.   The Class 6 Plan Note shall be amortized and paid in monthly installments of principal and interest, as though said note was being amortized on a 240 month amortized basis.  The Class 6 Note shall become due and payable in full five years

---

[4] This Class 6 No Cash Option shall apply if the Debtor is unable to make the $3,125,000.00 cash payment on or before September 30, 2011, or on terms otherwise agreed to as between the Debtor and SNB.

after date, September 30, 2011.   Assuming a Class 6 Note in the amount of $6,175,050.53, an interest rate equal to .05 percent, an amortization schedule of 240 months, and a balloon payment due on September 30, 2016, the monthly payments of principal and interest would be in the amount of $25,858.77, and the balloon payment due on September 30, 2016 would be in the amount of $4,662,736.55.  The Default Provisions and the Lien Retention Provisions shall be the same as above.

**(iv)    Class 6 No Cash Option – Cram Down**

In the event that SNB rejects this Plan, the debtor shall seek to confirm same over the rejection of SNB by invoking 11 U.S.C. § 1129(b)(2)(A)(i).  Specifically, the Debtor will show that (I) SNB shall retain its liens securing its claim; (II) the deferred cash payments will total at least the allowed amount of such claim, regardless of whether SNB makes the 1111(b)(2) Election; (C) the deferred cash payments, to wit: the monthly payments of principal and interest plus the balloon payment will have a value equal to the value of SNB's interest in the estate's interest in its collateral.

**Guarantees.**  The guarantees of Larry Shumate and American International Industries, Inc. shall continue with respect to the Class 6 Plan Note.

**7.    Class 7 – Allowed Secured Claim of CNC Associates, Inc.**

*a.    Description of Class 7 Claim.*

This class includes the Allowed Secured Claim of CNC Associates, Inc. ("CNC") pursuant to that certain Lease Rental Agreement dated February 23, 2010, between the Debtor and HAI Capital, Inc., which Lease Rental Agreement was assigned to CNC. According to the proof of claim filed by CNC, the amount the Debtor owed to CNC under the Lease Rental Agreement as of the Filing Date was $144,764.62, and the arrearages as of the Filing Date amounted $8,863.14.  The collateral securing the CNC claim is a HAAS CNC Lathe, Model SL-40.  CNC takes the position in its proof of claim that the Lathe has a value of $150,000.

*b.    Treatment of Class 7 Claim.*

Class 7 Allowed Secured Claim of CNC shall be reinstated effective upon the Effective Date, and the Debtor shall continue to be bound by, and make the contractual payments due under, the Lease Rental Agreement.   The contractual monthly payments are $2,954.38.  The amount past due as of the Filing Date, $8,863.14,  shall be paid in three equal installments of $2,954.38 each, on October 31, 2011, November 30, 2011, and December 31, 2011.

8.      **Class 8 – Allowed Secured Claim of Vencore Solutions LLC, d/b/a Vencore Capital**

   *a.      Description of Class 8 Claim.*

This class includes the Allowed Secured Claim of Vencore Solutions LLC, d/b/a Vencore Capital ("Vencore") pursuant to that certain Master Lease Agreement 8801 dated December 19, 2008, between the Debtor and Vencore.  According to the proof of claim filed by Vencore, the amount the Debtor owes under the Master Lease Agreement as of July 18, 2011, is $64,100.68, inclusive of arrearages due as of the Filing Date in the amount of $39,892.22.  The collateral securing the Vencore claim is a Sun Firm/Maxtec CNC Heavy Duty Flat Bed CNC Lathe, Model CST-42160.  Vencore is holding a deposit from the Debtor in the amount of $50,467.00.  Vencore takes the position in its proof of claim that the lathe has a value of $122,000.00.  In a November 10, 2010 appraisal of Debtor's equipment conducted by Plant & Machinery Inc., the lathe was valued at $170,000.00.

   *b.      Treatment of Class 8 Claim.*

Class 8 Allowed Secured Claim of Vencore shall be treated in the following fashion:  The Debtor estimates that the balance of the Vencore indebtedness as of the Effective Date will be $56,119.49, inclusive of the arrearages due as of the Filing Date in the amount of $39,892.22.   Debtor proposes to have Vencore apply the $50,467.00 deposit to the amount due under the Master Lease Agreement on the Effective, and pay the balance, approximately $5,652.49, on the Effective Date under this Plan, in full and final satisfaction of all amounts due under the Master Lease Agreement.

9.      **Class 9 – Allowed Unsecured Non-Insider Claims Against the Debtor – Administrative Convenience Class.**

   *a.      Description of Class 9 Claim.*

This class includes unsecured non-insider Claims against the Debtor with Allowed Claims that are $3,000.00 or less, or those creditors whose Claims are in excess of $3,000.00, but who elect to reduce their Claims to $3,000.00.

   *b.      Treatment of Class 9 Claims.*

Class 9 Allowed Unsecured Claims of Non-Insiders will be treated in the following fashion:  On the Effective Date, the Debtor shall pay each Creditor with an Allowed Claims in this Class a 20% dividend in full and final satisfaction of such Claim.  If any Creditor with an Allowed Unsecured Claim in this Class wishes to be treated in Class 10, such Creditor will be given an opportunity to do so at the time of voting and filling out the ballot which will accompany the official dissemination of this Plan.

10.     **Class 10.  Allowed Unsecured Non-Insider Claims.**

### a.  Description of Class 10 Claim.

Class 10 consists of the Claims of Creditors with Allowed Unsecured Non-Insider Claims, as set forth in the following table, plus the unsecured portion of the Class 2 Claim of SNB in the event SNB does not make the election under 11 U.S.C. § 1111(b)(2).

### b.  Treatment of Class 10 Claim.

<u>Class 10 Plan Note:</u>  The Reorganized Debtor shall issue to the Disbursing Agent, as agent for the Class 10 Creditors, a Class 10 Plan Note in the principal amount of 50% of the then Allowed Unsecured Claims.  Assuming  a total amount of Allowed Unsecured Creditors of $2,157,054.77, the Class 10 Plan Note shall be in the amount of $1,078,527.39.  The Class 10 Note shall be amended, reissued and delivered to the Disbursing Agent, as agent for the Class 10 Creditors, when the allowance process is completed, together with all payments then due under the amended Class 10 Note from the Effective Date to the amendment date.

<u>Interest Rate:</u>  Interest on the unpaid outstanding principal balance of Class 10 Plan Note shall be payable at the rate of one percent (1 %) per annum.

<u>Payment </u>Terms.  The Class 10 Plan Note shall be amortized and paid in monthly installments of principal and interest, as though said note was being amortized on a ten-year (120 month) amortized basis.  The Class 10 Note shall become due and payable in full five years after date on September 30, 2016.  Assuming a principal amount of the Class 10 Note of $1,078,527.39, interest at a one percent rate, and a ten-year amortization schedule, the monthly payments of principal and interest would be $9,448.34, and the balloon payment on September 30, 2016 would be $552,736.87.

<u>Redemption:</u>  The Debtor shall have the option to redeem the Class 10 Plan Note for cash payments equal to:

(1) 60% of the Class 10 Plan Note during the first 180 day period from and after the date of the Class 10 Plan Note;

(2) 65% of the Class 10 Plan Note during the second 180 day period from and after the date of the Class 10 Plan Note;

(3) 70% of the Class 10 Plan Note during the third 180 day period from and after the date of the Class 10 Plan Note;

(4) 75% of the Class 10 Plan Note during the fourth 180 day period from and after the date of the Class 10 Plan Note;

<u>Default Language:</u>  Upon a default by the Reorganized Debtor in the performance of its obligations under the Class 10 Plan Note, the Disbursing Agent or the Committee Lawyer, as agent for the Class 10 Creditors, may exercise all of the rights and remedies

set forth in the Class 10 Note, or any right or remedy available under applicable bankruptcy or non-bankruptcy law; provided, however, before exercising any such right or remedy, (a) the Disbursing Agent or Committee Lawyer must give written notice of a non-monetary default and an opportunity to cure such default for a period of 45 days from the date of service of such written notice of a non-monetary default, and (b) the Disbursing Agent or Committee Lawyer must give written notice of monetary default and an opportunity to cure such default for a period of 7 days from the date of service of such written notice of a monetary default. Such written notice shall be served by certified mail, return receipt requested, or by messenger, and shall be addressed to the Reorganized Debtor and Debtor's Counsel.

Cram Down:  In the event that the Creditors in Class 10 reject this Plan, the Debtor shall seek to confirm this Plan over the rejection by invoking 11 U.S.C. § 1129(b)(2)(B)(ii). Specifically, the Debtor will show that the holders of Claims junior to the claims in this Class will not receive or retain any property.

If any Creditor with an Allowed Unsecured Claim in this Class elects to be treated in Class 9, such Creditor will be given an opportunity to voluntarily reduce its claim to $3.000.00 and elect to be treated in Class 9.  Such election shall be made at the time of voting and filling out the ballot, which will accompany the official dissemination of this Plan.

## 11.   Class 11.  Allowed Unsecured Insider Claims.

### a.   Description of Class 11 Claim.

Class 11 consists of the Claims of Creditors with Allowed Unsecured Insider Claims against the Debtor.  Larry Shumate is the holder of a $103,539.00 claim in this Class.

### b.   Treatment of Class 11 Claim.

The claim of Larry C. Shumate shall, on the Effective Date, be exchanged for 100% of the newly issued common stock of the Reorganized Debtor.

## 12.   Class 12 – Allowed Interests.

### a.   Description of Class 12 Interests.

Class 6 consists of the Allowed Interests of Debtor's existing sole shareholder, Larry C. Shumate.

### b.   Treatment of Class 12 Interests.

The Allowed Interests of Larry C. Shumate shall, on the Effective Date. be

extinguished, and he shall receive no distribution under this Plan or from the Reorganized Debtor in respect of such cancelled shares.

## C.     The Reorganized Debtor's Acquisition of its Leased Manufacturing Facility

Debtor currently leases its manufacturing facility from P&S Properties, LLC (the "Landlord") pursuant to an Improved Property Commercial Lease dated October 13, 2008 (the "Lease"). The lease is for a five year term that commenced on October 3, 2008, and ends on September 13, 2008. The property is Building D in the 3083 Industrial Park, located at 12060 FM 3083, Conroe, Texas ("Debtor's Manufacturing Facility"). The Debtor is currently negotiating with the Landlord to acquire the fee interest covered by the Lease from the Landlord. The Landlord has filed a proof of claim claiming prepetition rent due in the amount of $103,066.00 in prepetition rent due under the Lease. Debtor has negotiated with the Landlord for the purchase of the Debtor's Manufacturing Facility for $1,800,000.00, and the Landlord has agreed to take 20% down with the balance owner-financed on a fifteen (15) year amortization schedule at a fixed rate equal to 7.0%. The Debtor is hereby offering the Landlord the same deal with 10% down. If the Landlord accepts this counteroffer, Debtor's monthly payments would be $14,561.02. Debtor plans to close this transaction on the Effective Date.

## E.     Summary of Payments to Classes 1-10 Creditors

| SUMMARY OF PLAN PAYMENTS TO CLASSES 1-10 CREDITORS | | | | |
|---|---|---|---|---|
| CREDITOR CLASS | AMOUNT DUE ON EFFECTIVE DATE | MONTHLY PAYMENTS | MONTHLY PAYMENTS ANNUALIZED | BALLOON PAYMENT DUE ON SEPTEMBER 30, 2016 |
| Class 1 | $56,000.00 | $00.00 | $00.00 | $00.00 |
| Class 2 | $00.00 | $1,616.20 | $19,394.40 | $86,332.04 |
| Class 3 | 00.00 | $00.00 | $00.00 | $00.00 |
| Class 4 | $00.00 | $00.00 | $00.00 | $00.00 |
| Class 5 | 00.00 | $00.00 | $00.00 | $00.00 |
| Class 6[5] | $00.00 | $25,858.77 | $310,305.24 | $4,662,736.55 |
| Class 7 | $00.00 | $2,954.38 | $35,452.56 | $2,954.38 |
| Class 8 | $5,652.49 | $00.00 | $00.00 | $00.00 |
| Class 9 | 15,422.44 | $00.00 | $00.00 | $00.00 |
| Class 10 | 00.00 | $9,448.34 | $113,380.08 | $552,736.87 |

---

[5] This assumes a no-cash option and an 1111(b)(2) Election by SNB.

| SUMMARY OF PLAN PAYMENTS TO CLASSES 1-10 CREDITORS | | | | |
|---|---|---|---|---|
| CREDITOR CLASS | AMOUNT DUE ON EFFECTIVE DATE | MONTHLY PAYMENTS | MONTHLY PAYMENTS ANNUALIZED | BALLOON PAYMENT DUE ON SEPTEMBER 30, 2016 |
| Land Acquisition | $180,000.00 | $14,561.02 | $174,732.24 | $14,561.02 |
| TOTAL: | $257,074.93 | $54,438.71 | $653,264.52 | $5,319,320.86 |

## V.   MEANS FOR EXECUTION OF THIS PLAN

### A.   Execution of Plan Documents

To effect the terms of the Confirmed Plan, Debtor and all Creditors shall, on or before the Effective Date, (1) execute all Plan documents referenced above in section V, including all plan notes and related documents called for under this Plan, (2) execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the confirmed Plan, (3) perform any other act, including the satisfaction of any lien, that is necessary for the consummation of this Plan, and (4) comply with any orders of the Court in that regard.

### B.   Exit Financing

To attempt to take advantage of the All Cash Option to discount and replace the SNB indebtedness, the Debtor has contacted several groups that have expressed interest in providing exit financing, including PPL Group LLC, Northbrook, IL 60062 ("PPL").  PPL is currently performing due diligence regarding the project.

### C.   Disbursing Agent

1.   **Disbursement of Payments.**  All payments to be made by the Debtor under this Plan to the holders of Allowed Claims in Classes 1 through 10 shall be made by the Disbursing Agent.  The Debtor shall deposit such funds with the Disbursing Agent within five business days after the date of entry of the Confirmation Order.

2.   **Disbursing Agent.**  The Disbursing Agent shall be Mr. Michael P. Jayson, CPA.

3.   **Disbursing Agent's Duties**.  The Disbursing Agent shall, on account of claims of such creditors, deposit such funds in an interest bearing account in a banking institution approved for deposit of funds held by the Office of the United States Trustee for Southern District of Texas. Thereafter, the Disbursing Agent shall disburse to creditors of the Debtor all distributions provided for in this Plan.

4.   **Costs of the Disbursing Agent.**  The Disbursing Agent shall be paid a fee for his services in the amount of $200.00 per month for each month during which he performs his duties to distribute the funds to Creditors in Class 1 – 10.

**D.      Continued Operations.**

The Debtor will continue to operate its business utilizing the following business strategies to achieve its objectives.

***Expand and grow SETI's contract machining and manufacturing business.***  SETI will continue to leverage long-standing relationships with itsglobal oil and gas partners to ensure that it continues to be the supplier of choice for new product development and additional product lines. SETI will continue to develop sales programs targeting machining services in support of R&D projects interfacing directly with customer's engineering managers and product developers.  With the addition of API 5CT and ISO/TS 29001 registration capabilities SETI is in position to access broader markets and pursue additional higher margin revenues. To complement its highly coveted API registrations, SETI boasts Quality Control and Quality Assurance programs that are staffed by highly skilled industry personnel. These capabilities attract and retain SETI's world-class customer base.

***Develop strategic supply chain alliances with SETI's customers***. While many of SETI's energy field services companies customers do not enter into long term contracts, SETI focus on developing incentive programs, stocking programs and other alliances long term and short term to enhance SETI's customer relationships.  This collaborative process can assist in reducing customers overall costs and serve to protect SETI's margins by better positioning the company in future bidding scenarios.

***Cost Management***.  SETI uses a multiple-discipline approach to cost management, aimed at building targeted gross margins into every job. This process includes aggressive bidding of material and outside services and related deliveries, close tolerance monitoring of set up and production machine time in jobs, coordinated production runs, and a concentrated effort to eliminate waste and scrap parts. In addition, SETI is focusing on soliciting more complex and elaborate machining work that demands higher hourly rates and higher margins. At the same time SETI is rationalizing away products that no longer fit SETI's profitability goals.

SETI utilizes industry-leading ERP software to manage SETI's production backlog and to assist us in knowing and managing costs in each job. All of SETI's production management personnel have been trained and log many years of experience with this system.

***Leverage SETI's manufacturing business and develop SETI's own product lines***. SETI's firm excels at manufacturing products for its customers and strategically SETI believe SETI's expertise, knowledge and reputation in the marketplace creates an opportunity to acquire, develop, and sell SETI's own products in the energy field services market.  SETI's customer base, channels of distribution and market focus may provide additional product line opportunities within areas such as fluid management, process controls, downhole completion, and post production.

E.      **Disclosure of the Reorganized Debtor's Management Team**

1.      Larry C. Shumate, President and Chief Executive Officer

Larry C. Shumate founded SETI's predecessor company Shumate Machine Works in 1978 and has more than 27 years of manufacturing and management experience.  Mr. Shumate has been the President of Shumate Machine since its inception and became SETI's President after its acquisition by American International Industries, Inc in October 2008. Larry enjoys long-standing personal relationships with top management personnel in many global companies. He has earned their trust by consistently delivering high quality machining services and by having a reputation of standing behind his work.

2.      Douglas Gamble

Doug Gamble is SETI's General Manager. He has over 25 years of experience in machining, manufacturing and management.  Doug spent over 16 years with Trico Industries,(currently SETIatherford) a downhole pump manufacturer. Doug has sat on API boards for Spec11B and developed systems and programs to meet ISO and API specifications. After coming on board with Shumate Machine Works in 2005, Doug has implemented systems and directed the company focus to manufacturing systems and ISO/API compliancy.

3.      Mike Degelia, Comptroller

Mike Degelia, SETI's controller, has 30 years of manufacturing accounting experience, including seven years  with NOV Brandt, 16 years of controllership responsibilities for Solvay Chemicals manufacturing plant in Deer Park, Texas, and Longview, Washington.  Mr. Degelia was also on the Solvay SAP implementation team and has experience with many manufacturing ERP systems. Mr. Degelia also served as controller for five years with Longwood Elastomers, Inc. in Brenham, Texas, and recently with VGX Pharmaceuticals before coming to work for SETI.

## VI.   CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The occurrence of each of the following events shall be a separate condition to the Consummation Date.

## A.      Entry of Confirmation Order.

The Confirmation Order shall have been signed by the Court and duly entered on the Court's docket in form and substance acceptable to the Debtor, and shall include, among other things, findings of fact and/or conclusions of law that:

1.      approve the terms of this Plan, as it may be amended or modified, and all other agreements contemplated by this Plan;

2.      provide that, except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate  will be permanently enjoined, on and after the Confirmation Date, from (i) commencing or

continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or against the Debtor's Bankruptcy Estate on account of any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from Debtor or the Debtor's Bankruptcy Estate  on account of any such Claim; provided however, notwithstanding any provision of this Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under this Plan;

3.　　　reserve the jurisdiction of the Bankruptcy Court in accordance with Section XII, below;

4.　　　terminate the automatic stay under § 362; and

5.　　　provide, pursuant to § 1125(e), that persons who have solicited acceptances or rejections of this Plan have acted in good faith and in compliance with the provisions, and are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

**B.　　Finality of Confirmation Order; Waiver.**

The Confirmation Order, in form and substance satisfactory to Debtor shall either have become a Final Order, or such condition shall have been waived by the Debtor.

## VII.　　PRESERVATION OF RETAINED CLAIMS AND VESTING

*Vesting*.

Except as otherwise provided in this Plan or the Confirmation Order, pursuant to §§ 1123(a)(5) and 1141, on the Effective Date, all property and assets of the Debtor funds shall be deemed vested in in the Reorganized Debtor.  Except as otherwise provided in this Plan or in the order confirming this Plan, after confirmation of this Plan, all assets of the Reorganized Debtor shall be deemed free and clear of all claims and interests of creditors of the Debtor.

*Retention and Enforcement of Causes of Action*.

Except as otherwise provided herein, all causes of action that the Debtor and its estates may hold against any person or entity shall automatically vest in the Debtor

## VIII.　　ACCEPTANCE OR REJECTION OF THIS PLAN

*Classes Entitled to Vote*.  Each Impaired Class of Claims or Interests that will (or may) receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan. Ballots shall be cast and tabulated with respect to Claims against and Interests in the Debtor's Bankruptcy Estate.  By operation of law, each Unimpaired Class of Claims is deemed to have accepted this Plan and, therefore, is not entitled to vote to accept or reject this Plan.  Classes 3, 5, 6 and 7 are impaired.

*Acceptance or Rejection by Impaired Classes.* An Impaired Class of Claims shall have accepted this Plan if (i) the holders (other than any holder designated under § 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this Plan; and (ii) the holders (other than any holder designated under § 1126(e)) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan. A Class is deemed not to have accepted this Plan if this Plan provides that the Claims or Interests of such Class do not entitle the holders of Claims or Interests in such Class to receive or retain any property under this Plan on account of such Claim or Interest.

*Cramdown.* The Debtor will request Confirmation of this Plan, as it may be modified from time to time, under § 1129(b) ("Cramdown").

## IX.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under § 365, the Debtor has the right, subject to Bankruptcy Court approval, to assume or reject any executory contracts or unexpired leases. If the Debtor rejects an executory contract or unexpired lease that was entered into before the Petition Date, it will be treated as if it had been breached on the date immediately preceding the Petition Date, and the other party to the agreement may assert a General Unsecured Claim in Class 6 for damages incurred as a result of the rejection. In the case of rejection of employment agreements and real property leases, damages are subject to certain limitations imposed by §§ and 502. Debtor is unaware of any contracts that need to be rejected.

## X.   MODIFICATIONS AND AMENDMENTS

The Debtor may alter, amend, or modify this Plan or any Exhibits thereto under § 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to the earlier of (i) the Consummation Date; or (ii) Substantial Consummation of this Plan, the Debtor may, under § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement approved with respect to this Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of this Plan so long as such proceedings do not adversely affect the treatment of holders of Claims or Equity Interests under this Plan; provided, however that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## XI.   RETENTION OF JURISDICTION

Under §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and passage of the Consummation Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

a.     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the

allowance or priority of Claims or Interest;

 b. Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims or Priority Claims;

 c. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

 d. Effectuate performance of and payments under the provisions of this Plan;

 e. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of this Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

 f. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

 g. Consider any modifications of this Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

 h. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of this Plan or the Confirmation Order;

 i. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

 j. Hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

 k. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

 l. Hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146;

 m. Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

 n. Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

o.      Enter a final decree closing the Debtor's Bankruptcy Case.

## XII.    EFFECTS OF CONFIRMATION

### A.    Binding Effect.

This Plan shall be binding upon all present and former holders of Claims and Interests and their respective successors and assigns.

### B.    Moratorium, Injunction and Limitation of Recourse For Payment.

Except as otherwise expressly provided in this Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor will be permanently enjoined, on and after the Consummation Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (ii), the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided, however, notwithstanding any provision of this Plan to the contrary, each holder of a Claim shall be entitled to enforce his, her or its rights under this Plan and Plan Documents.

### C.    Exculpation and Limitation of Liability.

Neither the Debtor's Bankruptcy Estate, nor the Debtor, nor any present or former employees, advisors, attorneys, or agents will have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept this Plan, the Debtor's Bankruptcy Case, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their willful misconduct or as provided by this Plan or this Plan Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor's Bankruptcy Estate or the Debtor, or any of their respective present or former directors, officers, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept this Plan, or the pursuit of confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except as provided by this Plan or by law.

## XIII.   DISCHARGE

 **(1)** Except as otherwise provided in this Plan, or in the order confirming this Plan, confirmation of a Plan will discharge the Debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in 11 U.S.C. 502 (g), 502 (h), or 502 (i), whether or not—

**(i)** a proof of the claim based on such debt is filed or deemed filed;

**(ii)** such claim is allowed or disallowed; or

**(iii)** the holder of such claim has accepted this Plan.

## XIV.   CONCLUSION AND RECOMMENDATION

The Debtor believes that Confirmation of this Plan is desirable and in the best interests of all holders of Claims and Interests.  The Debtor therefore urges you to vote to accept this Plan and to evidence such acceptance by returning the Ballot(s) so they will be <u>received</u> by the Balloting Deadline.

Date: July 28, 2011.

/s/ Leonard H. Simon
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
COUNSEL FOR DEBTOR
